Oyez, oyez, oyez. The Honorable Appellate Court, 5th District, State of Illinois, is now in session. The Honorable Justice Moore presiding, along with Justice Vaughn and Justice McCain. The first case this morning is 220731, Stacia v. Orlet. Arguing for the appellant is Donna Polinsky. Arguing for the appellee is Timothy Sansone. Each side will have 15 minutes for their argument. The appellant will also have 5 minutes for rebuttal. Please know only the clerk is permitted to record these proceedings. Good morning, counsel. Are the parties ready to proceed? Yes, Your Honor. Yes, Your Honor. Then we'll first hear from the appellant. Please state your name. Donna Polinsky. And you may proceed. Thank you, Your Honor. May it please the court, counsel, Your Honors. Good morning. This case is dealing with Section 203B and Section 208 regarding personal service of an individual. Section 203B sets forth the criteria for service within the State of Illinois, and Section 208 sets forth the criteria for service of process outside the State of Illinois. Section 208 states that service of process shall be in like manner as service within the State, and the affidavit shall state time, manner, and place of service. The court, in reviewing the information provided, can rely on the affidavit or other competent proofs to establish personal service. In this particular case, we have both of those. Well, first of all, there was an affidavit filed by Mr. Tracy, the process server. When he filed the affidavit, he set forth all of the information needed for the court to establish personal service, and he signed the document. However, his document was not notified. You mean notarized? I'm sorry? You mean notarized? Yes, I'm sorry. Yes, it was not notarized. There was a signature there, but it was not notarized. At the hearing, he testified as to what happened throughout the course of events in 2020, leading up to his service in August of 2020. Both In re Marriage of Lewis and Marriage of Passau have found that service can be made by other competent proofs, and that other competent proofs consist of testimony of the process server or deputy that effectuated the service. And that's what happened here. So moving forward to what happened at the hearing, both the trial court and opposing counsel have, I believe the issue is the two words placed in that affidavit, and that was drop service. Mr. Tracy testified as in his affidavit. It sets forth what had gone on briefly, what had transpired prior to the service. He indicated that he dropped served her because she refused to open the door and take the papers. He testified to the court that he put those two words in there to let the court know that she was an unwilling recipient, that she would not take the papers, so he had to leave them for her. Looking at the facts of the case, he had no other choice at that point. He's face to face with her through a screen door, not not a closed wooden front door, but a screen door. He has a conversation with her in the beginning of the conversation. She indicates she'll accept personal service and indicated she was her daughter. He knew her daughter's name of Lily. That's who she said she was based on the research that he had done throughout the course of attempting to serve her. Once she once she found out what the case was, because he read her the style of the case, she refused to open the door. So that in and of itself leaves him no choice. Counsel argues that this was was not proper service and does not address friend equipment, which states that Illinois is among the states accepting the general method of placing papers in the general vicinity of the person to be served and announcing the nature of the papers is proper service. That's exactly what happened here. The court in friend found that given the defendants evident unwillingness to accept service, the method employed by that particular process service server satisfied that statute. The second case that that I found was hat maker. And that case is even more difficult to accept that it was process personal service because the individual serving slid the papers under a hotel room door when the individual refused to open that hotel room door. Mr. Tracy was face to face with her, had a conversation with her when she refused to open the door and take the papers from his hand. He left them on on the front porch for her. Ms. Orlet's affidavit helps my case in two ways, I believe. First, both Whitworth v. Morgan and Nipkow v. Johnson have stated that a bare, uncooperated assertion that a person was personally served does not constitute a rebuttal of effective service. Whitworth, there was a defendant's testimony, his wife's testimony and his son's testimony that he wasn't personally served. And the court there found that that fell short of the clear and satisfactory evidence needed to rebut the presumption. In Nipkow, it was some very much more similar to this case than Whitworth because the defendant filed an affidavit in support of his motion. The court there found it was it was an issue of credibility. Defendant's self-serving statement that was not subject to cross-examination versus the testimony of the process server that he actually served the defendant. The court found that that wasn't sufficient and denied her motion. That's the same as it is here. The second reason that I believe her affidavit helps is that in her affidavit, she states, and I quote, he left the papers. Oh, I'm sorry. The summons in this case was left on my front porch. She didn't indicate in her affidavit something. He dropped something on my front porch and ran. He didn't tell me what it was. He didn't say it was a legal case. So he said here and left. She admitted he left her a summons on her front porch. Then she states in her affidavit, he dropped the summons and said, consider yourself served. This is a lot. This aligns with Mr. Tracy's testimony that he's told her he had service paperwork. He read her the style of the case. He said they were important legal papers that she should take. When she refused to open the door, he then sat him down on the porch and testified that he said, you really need to take these papers and told her to have a good day. She says that when he left the papers, he said, consider yourself served. I'm not sure where their confusion is with Ms. Orlett when she admits that she would serve with the summons, when she admits that he told her what it was, when he told her that she had been served, but that she says, I wasn't properly served with the papers. There's been no case law provided by Ms. Orlett or the trial court for that matter, that what Mr. Tracy did was proper service. The case law, all of the case law presented supports the position that she was personally served based on the facts and circumstances. If we take the court order at its face, there is absolutely no way someone could be personally served unless they voluntarily took the papers from the person. When we're talking about personal service, I understand there's other types of service like substitute service, but we're talking personal service here. The court didn't consider Friend or Hatmaker that leaving papers on the front porch in the general vicinity of an individual is proper service. Additionally, so Ms. Orlett argues that Mr. Tracy, throughout his testimony, said, I believe. He did say, I believe, when he would answer a question. I believe that's a filler word, but I'll give you a couple of examples. At one point, he was asked what he said to Ms. Orlett, and he said, I believe I said, and went through what he recalled saying to her. I wonder if counsel would feel better about it or not believe that it was confusion if he had said, I'm not stating what I said verbatim, but I said something to the effect of, and then gone into what he believed he had told her. Another situation that he said, I believe, was when he was asked the first time he attempted to serve Ms. Orlett. He said, I believe it was early 2020. He didn't remember the date. That doesn't mean that it's confusing or he's confused or anything to that effect. He remembered the exact date of service. Counsel indicates in his brief that the court found that the judge found his testimony filled with confusion. And in the record and in the order, there is only one mention of confusion by the trial court. Judge Horner set this aside, is that right? I'm sorry? Judge Horner set this aside? Yes. Yes. So what's our standard of review? I'm sorry, I didn't have that. I apologize, Your Honor. Well, doesn't the standard of review depend on how the petition was disposed of? If it was disposed of in a factual matter, it's de novo. If it was disposed in a, I'm sorry, in a legal matter, it's de novo. If he didn't find the facts in your client's favor, then it's abuse of discretion. Well, this was because there was an evidentiary hearing, I believe, and I could be wrong. I apologize. In all my years, I've never been asked that on the oral argument. Counsel, always be prepared to answer that question. I will from now on, and I can't find it in my brief. Standard of review for the dispute, because the issue was an issue of fact, whether the court had personal jurisdiction after an evidentiary hearing, the standard of review is against the manifest weight of the evidence. If the standard of review for whether a person presented a meritorious defense to a Section 2 to 214-01 motion is due diligence. How was this against the manifest weight? Because we have a situation where the statute has been complied with. Both Section 203, the provisions of 203B and 208 have been complied with. We have the testimony of the process server of exactly what he did. The manifest, there was no evidence presented by Ms. Orlett except her self-serving affidavit. The only evidence in this case proves personal service. The order is against that, all of that, that manifest weight of the evidence. It's against all of the evidence, quite frankly. Why do you say there was an evidentiary hearing? Because my memory of the record is that even before the hearing started, arguments were presented. Before any testimony was presented, the court said it was going to deny the motion. And then after I said that, then it took testimony. So is it really an evidentiary hearing if the court had already decided before the evidence was presented? Well, Your Honor, there was an evidentiary hearing. The only thing I can say to that is whether the judge was prejudging the case without hearing the testimony of the process server. I can't answer to that. There was an evidentiary hearing presented. There was evidence by the process server. Were you there, counsel? No, I was not trial counsel. Was Mr. Sansone? No, there were two different. John Johnston and Barb Shearer were trial counsel for the two parties. Okay, thank you. At any rate, Your Honor, the argument is that Mr. Tracy's testimony was filled with confusion. The only time the court indicated any confusion was on the record, on page 91 of the record, where he indicated that at one point during his testimony, he appeared confused. And that was about the number of the townhome that Ms. Orlett actually resided at. Not anything regarding the service of process, the investigation made to locate her, to find her, to be able to identify her, and basically affect service. Assuming there was actually an evidentiary hearing, which I'm not convinced there was really, but assuming there was, what facts are in dispute? Because it sounds to me like everybody agrees that he showed up at the house, she wouldn't open the door, she talked through a screen door, he dropped the papers on the porch. Her affidavit concedes that. That's what his testimony is. So what facts are in dispute at this point? Or what facts are in dispute at the hearing? There is nothing. The only thing in dispute is that Ms. Orlett states she was not personally served, and Mr. Stacia believes she was personally served, based on all of the evidence. Isn't that a legal question, then, where the drop of service, which is a term I never heard of before this case, but where the drop of service is personal service? Isn't that a legal question? That would be a legal question, yes. Well, if it's a legal question, wouldn't it be de novo, then, instead of abuse of discretion? And that would be correct, Your Honor. I base this on the testimony of the parties and the case law that I found, which is why I indicated that the review was based on an evidentiary hearing. But I agree 100%. If it is a factual question based on whether or not she was served because there are no disputed facts, then, yes, you would be correct. That's a pretty big difference, though, whether it's abuse of discretion or de novo. I would agree, and I would argue that we wouldn't probably even be here arguing if it were a de novo review. However, based on the fact that there was, in my research, looking at what happened in this case, which was very unusual with respect to the record, the judge saying that he was going to deny the motion, then granting an evidentiary hearing, that's a gray area to me. I'd rather argue the more difficult position and prove that, which I believe we have, than argue the easier position, so to speak, and then not address the fact that there was an evidentiary hearing and all of the testimony and evidence that did come out. You mentioned the Hatmaker case and the Friend case. Are you familiar with Alvarez v. Feeler? I am not, Your Honor. All right. Thank you. My time is up. Thank you, Your Honors. Any questions, Justice McCain? No. Justice Bowen? No. We'll now hear from the appellee. Please state your name for the record, and you may proceed. Thank you, Your Honor. My name is Tim Sansone, representing Ms. Orlett. May it please the court. We have to start with the standard review, of course, and it's a very exacting standard in this case. It's manifest weight of the evidence. And the quote from the Caneo case is, the question is, it's whether upon review of all the evidence, in the light most favorable to the prevailing party, an opposite conclusion is clearly apparent, or the factual finding is palpably ironious and wholly unwarranted, is clearly the result of passion or prejudice, or appears to be arbitrary and unsubstantiated by the evidence. Now, there was evidence taken. I understand that the court indicated at the outset that it was inclined to deny the motion, but it didn't take evidence. It did hear testimony. It did consider documents. And so I think it does qualify as an evidentiary hearing. So what facts do you think were in dispute? I'm sorry, Your Honor. Go ahead. What facts do you think were in dispute? Well, I think the facts were in dispute because the court, at the end of the day, said that it was woefully inadequate. There was testimony that Mr. Tracy didn't even state that it was a summons. Now, I realize there's evidence that he did, but as I often tell my clients, even if the only testimony in an auto accident case comes from the defendant and the defendant testifies or otherwise provides evidence that the light was green, the jury or the judge, if it's a bench trial, is entitled to disbelieve that and think that it's red because having seen the witness, the jury or the judge, just doesn't find the witness credible. And there were things in the record here which the judge referred to. He, this is Mr. Tracy, could not recall a correct address. He couldn't recall whether he had actually, whether it was actually Christine referring to Ms. Orlett. Counsel, on that point, didn't the process server identify her on the Zoom hearing as the person he left the service with? He said that, but there's also testimony that he didn't know that it was Christine referring to Ms. Orlett. So in that case, the court was entitled to believe that part of the testimony. The court is entitled to believe or disbelieve all part or none of a witness's testimony. And here, although Mr. Stacia has referred to the evidence that's favorable to him, the court is entitled to believe other evidence or simply not to believe him. Ms. Orlett was not required to provide testimony at this hearing, was not required to provide evidence at the hearing. And again, the court was entitled to disbelieve that. I'd like to address a couple other things that were discussed during the oral argument. Before you do that, can you just briefly explain what was the basis of Judge Horner's ruling? Certainly. One point that the judge made was that at least based on what he heard, that the unsworn return of service doesn't state that he ever announced to Ms. Orlett that he had a summons for her. It just states that he left paperwork at her front door. That was one of the things that the court referred to. And the court ended up using the phrase woefully inadequate when looking at some of the evidence that he heard about the nature of the attempted service of process. The affidavit, so-called affidavit, wasn't signed, wasn't notarized. The court was entitled to take that into account. Is there a case you can cite that mandates the notarization of an affidavit? No, Your Honor, and there is no case that requires that. The statute does state that other competent proof can be considered. Wouldn't pointing to your client on the Zoom call and say, that's her, that's who I served, be other competent proof? It would be competent proof, but the court was entitled to look at other evidence it received, indicating that he didn't know that it was Ms. Orlett, and believe that, and disbelieve the other evidence. Another example that I often give to my clients when I would be representing a client as an appellant is that if there are three witnesses, two say the light was green and one says the light was red, the court is entitled to believe the red or the jury. And that's the determination, even though there was more evidence that it was a different color. I want to address a couple of the things that Mr. Stacia brought up in the brief, and it was referred to during the appellant's oral argument, and that had to do with meritorious defense. The statute, subsection F of section 2-1401, clearly says that an allegation that a judgment is void substitutes for and negates the need to allege meritorious defense and due diligence, and that's the Sarcassian case, a Sarcissian, excuse me. So clearly, subsection F does away with any requirement for meritorious defense or diligence when you're arguing that a judgment was void in the first instance. At the end of the day, this is a case in which, respectfully, the court is required to view the evidence in a light most favorable to my client, to Ms. Orlett. The judge had a chance to see Mr. Tracy, to size him up and decide whether it found him credible or not. And at the end of the day, the circuit court found that the evidence, quote, was woefully inadequate to support the idea that service was proper. Now, your honors, I fully realize there's testimony there. There's documentary evidence that would suggest a different outcome should happen, but that's why we have evidentiary hearings. That's why we have trials, and respectfully, it's not this court's place to substitute its own thoughts about what the testimony was or whether it was credible for the circuit court's opportunity to actually see Mr. Tracy and to look at the other evidence that was in the record. So I would respectfully ask that, based on this record and based on the circuit court's ability to size up the evidence, that an affirmance is in order. Again, I'll end with where I started. This is a manifest way to the evidence standard review. It's very exacting. You have to find passion or prejudice. I have to find something arbitrary, something palpable, something unwarranted, something unsubstantiated, and that's just not this case. So I would ask the court to affirm the decision in favor of my client, Ms. Orlick. Didn't Christine's petition to vacate make a legal argument instead of a factual argument? Her facts in the petition were not that different from her opponent's. The challenge was a legal challenge, it appeared to me. It was ultimately asking for a legal decision from the court, but that legal decision was based on evidence that was presented, contested evidence. And in order to make the legal decision, the court took evidence and took that into account and made findings in reaching the legal decision that the attempted service was inadequate, woefully inadequate, in the judge's estimation. Anything else, Counselor? No, Your Honor. I would again ask for an affirmance on behalf of Ms. Orlick. Any questions, Justice Baum? No other questions, thank you. Justice McCain? Counsel, wasn't the trial court fixated on the phrase drop service? That was one of the things that the court took into account, yes, Your Honor, but it wasn't the only thing that led it ultimately to find Mr. Tracy less than credible and that led it to find overall that the evidence was woefully inadequate and to ultimately make the legal ruling that service was inadequate and that Ms. Orlick's motion to vacate should be granted. Thank you. Rebuttal, Ms. Polinsky? Thank you, Your Honor. I would disagree wholeheartedly that the trial court wasn't fixated on the words drop service. He questioned Mr. Tracy several times regarding drop service during the testimony and he used that phrase. He asked him point blank, that's different than personal service where Mr. Tracy testified that no, he had personal service. He just used that language to let the court know what had happened, that she was an unwilling participant. So I disagree. I believe that the court was fixated on those two words and decided that it was a personal service because of those two words. I have a problem with the only facts in the dispute of the court's order that the service was woefully inadequate. There's been no proof, no evidence of how it was woefully inadequate that is contrary to what the statute in case law provides. Speaking to what Mr. Sansone said earlier, he did identify her on the record during that hearing. He stated something to the effect, and I was looking for the page number, but I couldn't find it. That's her. She looks exactly the same. I'm not sure how you get more of a positive ID than saying something to that effect. Also, on page 69 of the record, Mr. Tracy testified that he told her, this is service paperwork. It's a legal matter. I'm not sure how you can argue that he did not identify what he was providing her and what they were, that they were service papers, that it was a summons, and it was a legal matter. He also read her the style of the case, and he told her that he needed her to pick the papers up and address it. Beyond that, I don't believe I have any other arguments in rebuttal. I'd stand on the brief and the reply brief and what we've done so far, Your Honor. Thank you. Any other questions, Justice Vaughn? No other questions. Thank you. Justice McCain? Nothing further. Thank you. The court will take this matter under advisement and issue its decision in due course. Thank you, Judge.